UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| EMIR CUNNINGHAM, <br><br> Plaintiff, <br><br> -against- <br><br> THE CITY OF NEW YORK, Rose Argo, former WARDEN OF ANNA M. KROSS CENTER, and JOHN DOES NOS. 1-20, <br><br> Defendants. |

1:15-cv-01266 (ALC)

**OPINION & ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Emir Cunningham ("Plaintiff") brings this action against Defendants the City of New York, Rose Argo, and John Does Nos. 1-20 (collectively, the "Defendants") pursuant to 42 U.S.C. § 1983. More specifically, Plaintiff asserts the following seven causes actions in relation to his incarceration at the Anna M. Kross Center at Rikers Island ("AMKC"): 1) deliberate indifference; 2) excessive force; 3) failure to intervene or protect; 4) civil conspiracy to violate civil rights; 5) assault and battery; 6) intentional and negligent infliction of emotional distress; and 7) negligence. Before the Court is Defendants' motion to dismiss Plaintiff's Second Amended Complaint.[1] ECF No. 49. After careful consideration, Defendants' motion is **GRANTED** in part and **DENIED** in part. In addition, Plaintiff is **GRANTED** leave to amend his complaint for the limited purpose of specifying the timing of his grievances.

## BACKGROUND

Plaintiff was incarcerated at the Manhattan Detention Center approximately from July 2013 to October 2013. *See* Second Amended Complaint ¶ 9. On October 5, 2013, Plaintiff was

---

[1] Although Defendants move to dismiss Plaintiff's Second Amended Complaint in its entirety, they do not raise arguments against Plaintiff's claims for deliberate indifference, failure to protect/intervene, and civil conspiracy to violate civil rights.

1

transferred to AMKC. *Id.* ¶ 14. There, Plaintiff was placed in a temporary housing unit for 9 days, where Plaintiff's property was both lost by the New York City Department of Correction ("DOC") and destroyed by other inmates; Plaintiff was also denied shower rights and access to personal hygiene products, in addition to not being provided with adequate food or water. *Id.* ¶¶ 17–18, 21, 62. Moreover, despite Plaintiff's multiple requests for prescribed daily medication, Plaintiff was denied access to his medication. *Id.* ¶¶ 16, 23, 25, 27–29.

Beyond being denied basic necessities, Plaintiff was physically attacked on three occasions by groups of inmates during the period he was held in the temporary housing unit at AMKC. *Id.* ¶¶ 19–21. On two of these occasions, DOC personnel invited or otherwise directed inmates to attack Plaintiff. *Id.* ¶¶ 33-35, 41–42, 48–54. As a result of these attacks, Plaintiff claims he had visible injuries and required medical attention however, the DOC denied him access to medical treatment. *Id.* ¶¶ 20, 42–43. Additionally, on October 10, 2019, Plaintiff was in a holding cell where an inmate began yelling, causing a disturbance. *Id.* ¶ 55. Subsequently, five to seven officers entered the cell to subdue the inmate. *Id.* Although Plaintiff was not engaging in dangerous behavior at this time, the officers held Plaintiff down on the ground with a shield for approximately three to five minutes. *Id.*

On October 13, 2013, Plaintiff was transferred to the George Motchan Detention Center ("GMDC") on Rikers Island. *Id.* ¶¶ 62-63. After Plaintiff was transferred from AMKC to GMDC, he wrote several grievances regarding the conditions at AMKC and about the attacks to the Warden of GMDC and Defendant Argo, who then served as Warden of AMKC. *Id.* ¶ 65. Plaintiff received responses indicating that Warden Argo had received the grievances; but, he did not obtain any resolution addressing his grievances. *Id.*

Plaintiff initiated this case as a *pro se* litigant and filed a form complaint on February 19, 2015. *See* ECF. No. 2. Per the Court's order, Plaintiff submitted an amended complaint ("the First Amended Complaint") on May 26, 2015. *See* ECF. Nos. 5–6. Thereafter, Defendants filed a motion to dismiss the First Amended Complaint, in which Plaintiff did not file any opposition briefing. *See* ECF. Nos. 19–20. Subsequently, the Court directed the Clerk of Court to help Plaintiff obtain counsel. *See* ECF. Nos. 28–29. On June 22, 2018, Plaintiff's counsel entered their appearances. *See* ECF. Nos. 34–35. With leave from the Court, Plaintiff's counsel filed a Second Amended Complaint on August 9, 2018. *See* ECF. Nos. 28, 43.

## STANDARD OF REVIEW

When considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, "the tenet

3

that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* 663.

## DISCUSSION

As a preliminary matter, Plaintiff's Second Amended Complaint is dismissed against the City of New York. As Plaintiff has stated previously, he does not bring a claim under § 1983 for municipal liability. *See* Pl.'s Opp., 18–19, ECF No. 53; Pl.'s Aug 31, 2018 Ltr., at 4 n.2, ECF No. 47. In addition, because Plaintiff has similarly stated he does not bring a claim of deprivation of property, the Court will not address the Defendants' arguments on this purported claim. *See* P.'s Opp., 18–19, ECF No. 53; Pl.'s Aug 31, 2018 Ltr., at 1n.1, ECF No. 47.

In the motion to dismiss, Defendants argue Plaintiff fails to state a claim of excessive force. The Defendants also assert that Plaintiff's state law claims are barred by the statute of limitations. Lastly, the Defendants argue the Second Amended Complaint should be dismissed against Defendant Argo because Plaintiff has failed to sufficiently allege her personal involvement in the alleged constitutional or state law violations. In the alternative, the Defendants argue that Defendant Argo is entitled to qualified immunity.

### I. Excessive Force

42 U.S.C. § 1983 "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015); *Portillo v. Webb*, 2017 WL 4570374, *3 (S.D.N.Y. Oct. 11, 2017) (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)). When force is "purposefully or knowingly used against a pretrial detainee, the detainee must show only that the force was objectively unreasonable." *Portillo*, 2017 WL 4570374, *4 (quoting *Kingsley*, 135 S.Ct. at 2473). "Objective reasonableness turns on the facts and circumstances of each particular case," and courts may consider factors such as:

> (1) the force used in relation to the need for force, (2) a plaintiff's resulting injuries, (3) efforts made by an officer to limit the amount of force applied, (4) the severity of the situation at hand, (5) the threat reasonably perceived by an officer or officers, (6) and the resistance level of a plaintiff.

*Kingsley*, 135 S.Ct. at 2473. When analyzing the injury component of an excessive force claim, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline" rather than to "maliciously and sadistically [] cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). In addition, Courts must consider the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," and "appropriately defer[] to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Kingsley*,135 S. Ct. 2466, 2473 (2015) (quoting *Bell v. Wolfish,* 441 U.S. 520, 540, 547 (1979); *Edrei v. Maguire*, 892 F.3d 525, 535 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 2614, 204 L. Ed. 2d 263 (2019).

Here, Plaintiff alleges that on October 10, 2013, an inmate located in his holding cell became upset and caused a disturbance. As a result, approximately five to seven officers entered the holding cell to subdue the inmate. Although Plaintiff had not engaged in any dangerous behavior, the officers held Plaintiff down to the ground with a shield for about three to five minutes. The Defendants argue that holding Plaintiff on the ground with a shield was rationally related to a government objective and therefore, Plaintiff has failed to state a claim for excessive force.

At this early pleading state and drawing all reasonable inferences in Plaintiff's favor, the Court cannot reach the conclusion that the force used against the Defendant was applied in good-faith and for the sole purpose of quelling the disturbance for three main reasons. First, Plaintiff has alleged that at the time of the disturbance, he was not engaging in any dangerous or violent

5

behavior. *See Myers v. Murphy*, No. 3:15-CV-1751 (VAB), 2016 WL 1192650, at *2 (D. Conn. Mar. 28, 2016) (finding that at the motion to dismiss phase it is sufficient that the Defendant alleged "he was not resisting or violating any prison rules"); *Lemmo v. McKoy*, No. 08-CV-4264 RJD, 2011 WL 843974, at *6 (E.D.N.Y. Mar. 8, 2011) ("recogniz[ing] that intentional, gratuitous uses of force that are not required to subdue an individual likely fail the . . . objective unreasonableness test."). In addition, Plaintiff's Second Amended Complaint includes numerous allegations that the Defendants mistreated Plaintiff, including both instigating fights against Plaintiff and withholding his medication, food, property and access to basic necessities. When coupled together, these two factual allegations suggest the officers may have been motivated to, and very well could have, applied more force than what was necessary to quell the disturbance. Lastly, "[a]s a general matter, the fact intensive inquiry of whether a particular use of force was reasonable is best left for a jury to decide." *Jones v. Rivera*, No. 13-CV-1042 (NSR), 2015 WL 8362766, at *5 (S.D.N.Y. Dec. 7, 2015) (quoting Landy v. Irizarry, 884 F.Supp. 788 (S.D.N.Y. 1995)). Without the benefit of discovery, the Court cannot adequately assess: whether holding the Plaintiff down on the ground was necessary; whether the officers undertook any efforts to limit the amount of force utilized; whether the disturbance was severe; and the threat reasonably perceived by the officers from the disturbance. Accordingly, the Defendants' motion to dismiss as to excessive force is **DENIED**.

II.     **State Law Claims**

Pursuant to N.Y. Gen. Mun. Law § 50-i(1)(c), claims against "the City of New York, any subdivision thereof, or any of its employees must be brought within one year and ninety days after the date of the event on which the claim is based." N.Y. Gen. Mun. Law § 50-i(1)(c); *see also Manzum v. City of New York*, No. 1 5-CV-88 I 0, 2016 U.S. Dist. LEXIS 119213, at *29

(S.D.N.Y. Sep.2, 2016) (citations omitted); *Nelligar v. Clark*, 2012 U.S. Dist. LEXIS 176869, at *32-33 (S.D.N.Y. Dec. 7, 2012). Generally, "[i]n responding to a pleading, a party must affirmatively state any . . . affirmative defense, including: statute of limitations." *See* Fed. R. Civ. P. 8(c)(1). If the defense based on a statute of limitation is not raised in a timely manner, it may be waived. *See S.E.C. v. Amerindo Inv. Advisors*, 639 F. App'x 752, 754 (2d Cir. 2016)

Here, Plaintiff alleges state law claims for assault and battery, intentional and negligent infliction of emotional distress, and negligence stemming from events occurring between October 5, 2013 and October 13, 2013. But, Plaintiff filed his initial complaint on February 19, 2015, which is beyond the one year and ninety day statute of limitations for the aforementioned claims. Therefore, Plaintiff's claims are untimely.

Plaintiff's argument that the Defendants waived a statute of limitations defense against the state law claims by not raising said defense earlier is unpersuasive. As one of the cases cited by Plaintiff states,

> [w]hen a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward. . . . Because a plaintiff's new complaint wipes away prior pleadings, the amended complaint opens the door for defendants to raise new and previously unmentioned affirmative defenses. . . . [T]o hold to the contrary would, in essence, enable plaintiffs to change their theory of the case while simultaneously locking defendants into their original pleading. This result would clearly contravene Federal Rule of Civil Procedure 15(a) which authorizes the amendment of answers as justice so requires.

*Plon Realty Corp. v. Travelers Ins. Co.*, 533 F. Supp. 2d 391, 394 (S.D.N.Y. 2008) (internal quotations and citations omitted); s*ee Rosenberg v. City of New York*, No. 09-CV-4016, 2011 WL 4592803, at *16 (E.D.N.Y. Sept. 30, 2011); *see also Castillo v. Rodas*, No. 09 CIV. 9919, 2014 WL 1257274, at *16 (S.D.N.Y. Mar. 25, 2014); *Legal Aid Soc'y v. City of New York*, 114 F. Supp. 2d 204, 222 (S.D.N.Y. 2000). Accordingly, because Plaintiff filed a Second Amended Complaint and the Defendants raised the statute of limitation defense at the earliest point in

7

response to said complaint, the Court finds Defendants did not waive said affirmative defense. Hence, the Defendants' motion to dismiss Plaintiff's claims for assault and battery, intentional and negligent infliction of emotional distress, and negligence is **GRANTED**.

### III. Individual Liability Against Warden Argo

In order to establish individual liability under § 1983, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages." *Back v. Hastings on Hudson Union Free School Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (citing *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Personal involvement can be demonstrated by introducing evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendants, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Back*, 365 F.3d at 127 (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Dismissal is warranted "when a plaintiff fails to allege how [a] particular defendant was personally involved in any of the actions or inactions that purportedly led to a violation of the plaintiff's constitutional or federal rights." *Townsend v. Clemons*, 2013 WL 818662, *4 (S.D.N.Y. Jan 30, 2013) (citing *Hemmings v. Gorczyk*, 134 F.3d 104, 109 n. 4 (2d Cir. 1998)).

Here, Plaintiff wrote several grievances to Warden Argo concerning his treatment at AMKC. Although Plaintiff received responses confirming that Warden Argo received his grievances, Plaintiff alleges Defendant Argo failed to address said complaints. The Defendants

argue that personal involvement cannot be demonstrated because Plaintiff alleges that he wrote the grievances about the conditions at AMKC after he was transferred to a different facility. As a result, the Defendants assert Defendant Argo could not remedy the alleged constitutional violations because they were no longer ongoing. However, the Court need not address this argument since Plaintiff has requested leave to amend his Second Amended Complaint to include more specific information about the timing of his grievances. Accordingly, Plaintiff is **GRANTED** leave to amend his complaint for this limited reason. Defendants' motion to dismiss the complaint as to Defendant Argo is consequently **DENIED** as moot.[2]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part. More specifically, Defendants' motion is **GRANTED** as to Defendant City of New York, as Plaintiff is not asserting a §1983 claim of municipal liability. In addition, Defendants' motion to dismiss Plaintiff's excessive force claim is **DENIED**. Defendants' motion to dismiss Plaintiff's state law claims of assault and battery, intentional and negligent infliction of emotional distress, and negligence is **GRANTED**. Lastly, because Plaintiff is **GRANTED** leave to amend his complaint for the limited purpose of specifying the timing of his grievances, Defendants' motion to dismiss the Second Amended Complaint as to Defendant Argo is **DENIED** as moot.

**SO ORDERED.**

**Dated: September 30, 2019**
       New York, New York

ANDREW L. CARTER, JR.
**United States District Judge**

---

[2] Should Plaintiff sufficiently plead Defendant Argo's personal involvement in his third amended complaint, the Court will need to consider whether Defendant Argo is entitled to qualified immunity.